## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHARON L. J.,                    )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        1:22CV780
                                 )
KILOLO KIJAKAZI,                 )
Acting Commissioner of Social    )
Security,                        )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sharon L. J., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Brief); Docket Entry 14 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 215-25), alleging a disability onset date of March 20, 2020 (see Tr. 215, 218, 220). Upon denial of that application initially (Tr. 68-75, 89-98) and on reconsideration (Tr. 76-82, 108-17), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 105-07). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-62.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 19-39.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 212-14, 386-88), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2025.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 20, 2020, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: osteoarthritis of the bilateral knees and tear of the anterior horn of the medial meniscus of the right knee.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

. . .

5. . . . [Plaintiff] has the residual functional
capacity to perform medium work . . . except [she] can
frequently balance, as defined in the [Dictionary of
Occupational Titles ("DOT")]. [She] can frequently
stoop, kneel, crouch and crawl; frequently climb ramps
and stairs; and occasionally climb ladders, ropes, and
scaffolds.

. . .

6. [Plaintiff] is capable of performing past relevant
work as a customer service manager, healthcare technician
and retail sales associate. This work does not require
the performance of work-related activities precluded by
[Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs
that exist in significant numbers in the national economy
that [Plaintiff] also can perform, considering [her] age,
education, work experience, and residual functional
capacity.

. . .

7. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from March 20, 2020, through
the date of this decision.

(Tr. 24-34 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given

3

those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal

4

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[4]

## B.  <u>Assignments of Error</u>

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of Lorraine [sic] R. Bowen, P.A.-C. [('PA Bowen')]" (Docket Entry 11 at 3 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 14 at 1-6); and

2) "[t]he ALJ's RFC determination is the product of legal error where she fails to adequately account for Plaintiff's severe impairments of osteoarthritis of the bilateral knees and tear of the anterior horn of the medial meniscus of the right knee" (Docket Entry 11 at 18 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 14 at 6-8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (<u>See</u> Docket Entry 13 at 10-23.)

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Opinions of PA Bowen

In Plaintiff's first issue on review, she maintains that "[t]he RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of [PA Bowen]." (Docket Entry 11 at 3 (bold font and single-spacing omitted); see also Docket Entry 14 at 1-6.) More specifically, Plaintiff argues that "the ALJ failed to properly explain how she considered the supportability factor as required by the regulations" (Docket Entry 11 at 6 (citing Tr. 31, and 20 C.F.R. § 404.1520c(c)(1))), as well as "failed to provide an adequate explanation as to how she considered the consistency factor" (id. at 8 (referencing Tr. 31, and citing 20 C.F.R. § 404.1520c(c)(2))). Plaintiff additionally faults the ALJ for "not provid[ing] any explanation . . . why [she] did not incorporate PA Bowen's opinions" regarding lifting/carrying, postural movements, the impact of pain on attention/concentration, and attendance at work, "despite having found [PA Bowen's] opinion generally persuasive." (Id. at 15 (citing Tr. 31, 326-27).) According to Plaintiff, "[t]he ALJ's failure to properly evaluate PA Bowen's opinion or otherwise incorporate her limitations despite finding the opinion persuasive was not harmless[,] as Plaintiff would have been found disabled but for [the ALJ's] errors." (Id. at 16.)

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 215-25)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions and prior administrative medical findings or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[5] Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together

_____

[5] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5).

in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. § 404.1520c(b)(2).[6] The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 404.1520c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

On December 22, 2020, PA Bowen (a Physician's Assistant practicing with Dr. Jimmy Mali at the EmergeOrtho Interventional Pain Clinic ("IPC") (see Tr. 394)) completed and signed a preprinted form provided by Plaintiff's attorney entitled "Medical Source Statement - Physical" ("MSS") (Tr. 325-28), on which PA

---

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

Bowen indicated that Plaintiff had visited the IPC "every [three] months" since her "[fir]st ap[pointment]" on October 22, 2018, for knee osteoarthritis which caused Plaintiff to experience "knee pain, instability, [and] difficulty with [weight-bearing] activity" (Tr. 325). As a result of those symptoms, PA Bowen opined that Plaintiff could stand, walk, and sit each up to two hours total in an eight-hour work day, would "need a job that permitted shifting positions *at will* from sitting, standing or walking," could occasionally lift up to 20 pounds, could rarely (defined as one to five percent of an eight-hour work day) twist and climb stairs, and could never stoop or crouch/squat. (Tr. 326 (italics in original).) In PA Bowen's view, Plaintiff's pain would frequently "interfere with attention and concentration needed to perform even simple work tasks," and her impairments and treatment would cause her to miss work three days per month. (Tr. 327 (bold font omitted).)

The ALJ evaluated the opinions of PA Bowen as follows:

. . . [T]he [ALJ] considered the [MSS] completed by [PA Bowen] in December 2020. . . . To the extent that [PA] Bowen's statement can be interpreted as an assertion that [Plaintiff]'s physical functioning would be limited by osteoarthritis of the bilateral knees, the [ALJ] finds [PA] Bowen's statement is generally persuasive, as her findings are supported by her specialized medical knowledge, clinical observations, frequency of contact, and physical examination findings.

However, in terms of [Plaintiff]'s exertional capabilities, the record does not document any abnormal physical examination findings or reflect any observations

12

indicating [Plaintiff]'s symptoms resulted in calf weakness, crepitus, ecchymosis, foot drop, motor strength deficits, significant swelling of the extremities or joints, or vein engorgement [(Tr. 397, 410, 423, 559, 647-48)]. Correspondingly, the record does not contain any updated imaging scans such as x-rays or MRI, documenting and/or identifying any further degeneration (breakdown) of the bilateral knee joints, dislocation, fracture, inflammation, malalignment of the bones, cartilage, ligaments or tendons, injuries of the meniscus, or other acute pathology. Moreover, [PA] Bowen's overall statements is [sic] somewhat inconsistent with [Plaintiff]'s testimony, acknowledged [sic] some improvement of her symptoms with current regimen of long-term drug therapy and therapeutic injections at three-month intervals. Accordingly, the [ALJ] finds the evidence of record does not support the additional and more restrictive exertional and postural limitations suggested by [PA] Bowen that would preclude medium exertion and reduce [Plaintiff]'s [RFC] beyond that already discussed.

(Tr. 31 (some internal parenthetical citations omitted).) Plaintiff challenges that analysis on three grounds, all of which have merit.

a.  <u>Supportability</u>

Regarding the supportability factor, Plaintiff notes that "[t]he ALJ [] conceded that PA Bowen's findings were 'supported by her specialized medical knowledge, clinical observations, frequency of contact, and physical examination findings'" (Docket Entry 11 at 7 (quoting Tr. 31)), but then "provide[d] a list of evidence that [the ALJ] f[ound] was not reflected within the record including various irrelevant observations and MRI evidence" (id. (citing Tr. 31)). Plaintiff further points out that the ALJ "fail[ed] to address [PA Bowen's objective] findings" relating to Plaintiff's

13

right knee (id. at 8 (citing Tr. 31)), such as that Plaintiff "ambulated with a limp; she had tenderness to palpation of the medial joint space and popliteal fossa; [she had] osteoarthritis changes [] at the medial joint line[;] [she had] tenderness to palpation over [the] pes anserine bursa; she exhibited crepitus; she had pain with flexion and extension; and [she] appeared to have some alignment issues with the tibia" (id. (citing Tr. 397, 410, 541, 559, 648)).

As an initial matter, Plaintiff mischaracterizes the ALJ as having "conceded that PA Bowen's <u>findings</u> were 'supported by her specialized medical knowledge, clinical observations, frequency of contact, and physical examination findings.'" (Docket Entry 11 at 7 (emphasis added) (quoting Tr. 31).) The ALJ actually stated that, "[t]o the extent that [PA] Bowen's statement can be interpreted as an assertion that [Plaintiff]'s <u>physical functioning would be limited by osteoarthritis of the bilateral knees</u>, the [ALJ] finds [PA] Bowen's statement is generally persuasive, as her findings are supported by her specialized medical knowledge, clinical observations, frequency of contact, and physical examination findings." (Tr. 31 (emphasis added).) Thus, the ALJ did <u>not</u> deem "generally persuasive" (id.) PA Bowen's <u>specific</u> limitations, e.g., that Plaintiff could sit for up to two hours total in an eight-hour work day (see Tr. 326), but, rather, found persuasive PA Bowen's opinion that Plaintiff's bilateral knee

14

osteoarthritis caused "limit[ations]" in Plaintiff's "physical functioning" (Tr. 31), a finding consistent with the ALJ's determination at step two of the SEP that Plaintiff's bilateral knee osteoarthritis qualified as a severe impairment (see Tr. 25).

Nevertheless, the ALJ's evaluation does not adequately assess the supportability of PA Bowen's opinions. As Plaintiff points out (see Docket Entry 11 at 7), the ALJ observed that "the record d[id] not document . . . calf weakness, crepitus, ecchymosis, foot drop, motor strength deficits, significant swelling of the extremities or joints, or vein engorgement" (Tr. 31 (citing Tr. 397, 410, 423, 559, 647-48)), but that observation does not undermine the supportability of PA Bowen's opinions for two reasons. First, PA Bowen did document crepitus in Plaintiff's knees at every physical examination she conducted in the record (see Tr. 397, 410, 457, 466)[7] and, more significantly, the ALJ entirely failed to discuss why PA Bowen's consistent findings of a limp, tenderness to palpation, crepitus, pain with range of motion, and osteoarthritic changes (see id.) did not support her opinions (see Tr. 31). Second, PA Bowen did not make any findings regarding ecchymosis, foot drop, or vein engorgement (see id.) and, to the extent another provider made such findings (see Tr. 423 (examination on April 28,

_____

[7] PA Bowen did not perform a physical examination during Plaintiff's visit on June 16, 2020, as PA Bowen conducted that visit "via telemedicine due to the Covid-19 pandemic." (Tr. 414 (all caps font omitted).)

15

2020, conducted by <u>Leonilde Alves, PA-C</u> ("PA Alves"), finding no calf weakness, foot drop, ecchymosis, or engorged veins)), those findings do not bear on the <u>supportability</u> factor, <u>see</u> <u>Bright v.</u> <u>Saul</u>, No. 1:19CV504, 2020 WL 4483008, at *3 (M.D.N.C. Aug. 4, 2020) (unpublished) (Webster, M.J.) ("Supportability is an <u>internal</u> check that references objective medical evidence and supporting explanations <u>that come from the source [her]self</u>." (emphasis added)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 20, 2020) (Schroeder, C.J.). As the foregoing discussion shows, the ALJ's evaluation of the supportability of PA Bowen's opinions, one of the two "most important factors" in medical opinion analysis, 20 C.F.R. § 404.1520c(b)(2), fails to comply with the regulatory requirements.

b. <u>Consistency</u>

With respect to consistency, Plaintiff faults the ALJ for "provid[ing] little more discussion than the list of examination findings and diagnostic evidence she note[d wa]s absent from the record," and "fail[ing] to explain how the absence of th[ose ] findings . . . conflict[ed] with PA Bowen's assessed limitations." (Docket Entry 11 at 9 (referencing Tr. 31).) Plaintiff further contends that "the ALJ's discussion of the consistency factor is devoid of any consideration as to the extent to which [PA Bowen's] opinion[s we]re consistent with the objective evidence . . . [ in] the record." (<u>Id.</u>; <u>see also</u> <u>id.</u> at 9-12 (detailing record evidence

16

Plaintiff believes cohered with PA Bowen's opinions (citing Tr. 400-06, 417-20, 423, 427-46, 449-63, 499, 648-49)).)

To the extent the ALJ intended her observation that "the record d[id] not document . . . calf weakness, crepitus, ecchymosis, foot drop, motor strength deficits, significant swelling of the extremities or joints, or vein engorgement" (Tr. 31 (citing Tr. 397, 410, 423, 559, 647-48)) to constitute an analysis of the consistency of PA Bowen's opinions with the record, that analysis also falls short of the regulations' requirements. In making that observation, the ALJ cited to five treatment records from PA Bowen (id. (citing Tr. 397, 410, 559, 647-48)), which did not illustrate "the extent to which [PA Bowen's] opinion [wa]s consistent with the evidence from other medical sources and nonmedical sources in the claim," Revisions to Rules, 82 Fed. Reg. at 5853 (emphasis added); see also 20 C.F.R. § 404.1520c(c)(2), Bright, 2020 WL 4483008, at *3 ("Consistency is an external check that references evidence from other medical and nonmedical sources." (emphasis added)).

Furthermore, although the one non-PA Bowen record the ALJ cited does indeed reflect the absence of conditions such as ecchymosis, foot drop, and vein engorgement (see Tr. 31 (citing Tr. 423 (examination of PA Alves on April 28, 2020))), the ALJ failed to explain how the absence of those conditions conflicts in any way with PA Bowen's opinions regarding the intensity and functionally

17

limiting effects of Plaintiff's bilateral knee osteoarthritis. (See id.) Moreover, although PA Alves did record full strength, she also documented a slight limp, mild swelling in the medial right knee, minimally reduced flexion, and moderately reduced extension. (See Tr. 423.) Accordingly, the ALJ's citation to a single examination record from a provider other than PA Bowen, which contains one finding arguably inconsistent with PA Bowen's opinions and multiple findings more supportive of those opinions, does not suffice as a consistency analysis under the regulations.[8]

Plaintiff additionally notes that the ALJ found PA Bowen's opinions "'somewhat inconsistent'" with Plaintiff's testimony that "'long-term drug therapy and therapeutic injections at three-month intervals'" resulted in "'some improvement'" of her knee symptoms (Docket Entry 11 at 12 (quoting Tr. 31, and referencing Tr. 55)),

---

[8] The ALJ's observation that "the record d[id] not contain any updated imaging scans such as x-rays or MRI, documenting and/or identifying any further degeneration (breakdown) of the bilateral knee joints, dislocation, fracture, inflammation, malalignment of the bones, cartilage, ligaments or tendons, injuries of the meniscus, or other acute pathology" (Tr. 31) also fails to satisfy the regulatory requirements for the consistency factor for two reasons. First, the ALJ did not point to (and the undersigned did not locate) any evidence that Plaintiff's treating providers recommended she obtain updated x-rays or MRIs of her knees (see Tr. 31) and, thus, the ALJ should not have drawn an adverse inference from the lack of such updated evidence in the record. Second, and more significantly, existing x-rays and an MRI of Plaintiff's knees demonstrate significant pathology in Plaintiff's knees (see Tr. 398 (discussing 6/17/17 MRI of Plaintiff's right knee showing horizontal tear of anterior horn of medial meniscus with associated parameniscal cyst, severe patellofemoral and moderate tibiofemoral chondrosis, and small joint effusion with popliteal cyst, and 3/23/18 x-ray of right knee showing mild medial compartment narrowing and small osteophyte on medial tibial plateau), 489 (documenting 5/1/19 x-ray of Plaintiff's left knee showing medial compartment joint space loss with subchondral sclerosis, osteophyte formation, and thinning of patellofemoral articular surfaces)), and the ALJ should have discussed the consistency of that evidence with PA Bowen's opinions, but failed to do so (see Tr. 31).

but argues that the ALJ failed to consider Plaintiff's testimony "that she continued to suffer from significant right knee pain despite having received some relief from pain with her injections" (id. at 13 (citing Tr. 55)), that she could not "stand longer than 10 minutes" (id. at 13-14 (citing Tr. 54)), and that she could not "sit for more than fifteen to twenty minutes" (id. at 14 (citing Tr. 54)).

The ALJ here overlooked and/or mischaracterized significant aspects of Plaintiff's subjective statements. In that regard, the ALJ found that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 29), and noted that "[Plaintiff] report[ed] that she ha[d] developed increasing discomfort, aching, stiffness, and swelling affecting her right knee and further report[ed] that th[o]se symptoms [we]re aggravated and intensified with prolonged standing and walking" (id. (emphasis added) (citing Tr. 334, and "[h]earing [t]estimony")). The ALJ, however, did not even acknowledge (much less discuss) Plaintiff's testimony that she could not stand for more than 10 minutes or sit for more than 15 to 20 minutes, and that she used a motorized cart when grocery shopping (see Tr. 54; see also Tr. 334 (Plaintiff's statement on Function Report that she could only "walk [for] about 15 minutes"). (See Tr. 28-32.) Moreover, the ALJ mischaracterized those

19

statements as indicating that only "<u>prolonged</u> standing and walking" increased Plaintiff's symptoms. (Tr. 29 (emphasis added) (citing Tr. 334, and "[h]earing [t]estimony").) In light of the ALJ's failure to discuss Plaintiff's subjective statements which harmonized with PA Bowen's opinions, the ALJ's reliance solely on Plaintiff's testimony that the injections reduced her knee pain "somewhat" and allowed her "to function a little bit" (Tr. 55) to find her testimony "somewhat inconsistent" with PA Bowen's opinions (Tr. 31) also fails to satisfy the regulatory requirements for the consistency factor.

c. <u>Explanation for Limitations Omitted from RFC</u>

Plaintiff additionally faults the ALJ for "not provid[ing] any explanation . . . why [she] did not incorporate PA Bowen's opinions" regarding lifting/carrying, postural movements, the impact of pain on attention/concentration, and attendance at work, "despite having found [PA Bowen's] opinion generally persuasive." (Docket Entry 11 at 15 (citing Tr. 31, 326-27).) According to Plaintiff, "[t]he ALJ's failure to properly evaluate PA Bowen's opinion or otherwise incorporate her limitations despite finding the opinion persuasive was not harmless[,]" because the VE's testimony established the disabling impact of PA Bowen's opinions that Plaintiff would need a sit/stand option at will, and that her pain would frequently interfere with the attention and concentration needed to complete simple tasks (<u>id.</u> at 16 (citing

20

Tr. 60-61, and referencing Tr. 326-27)).  Plaintiff further points out that "PA Bowen's limitation that Plaintiff could only sit and/or walk/stand for 1-2 hours each does not amount to a combined total of eight hours of exertional activity, and thus would preclude fulltime work."  (Id. at 17 (referencing Tr. 326).)

To begin, the ALJ made clear that she rejected the "exertional and postural limitations" opined by PA Bowen (Tr. 31) and, thus, the ALJ provided an explanation (albeit an insufficient one, as explained above) for rejecting PA Bowen's opinions regarding Plaintiff's need for a sit/stand option and her abilities to lift, carry, twist, stoop, crouch/squat, and climb stairs (see Tr. 326). The ALJ erred, however, by failing to provide any explanation for rejecting PA Bowen's opinions that Plaintiff's pain would frequently interfere with the attention and concentration needed to perform even simple tasks, and that her impairments and treatment would cause her to miss work three days per month (see Tr. 31, 327).  See Raymer v. Colvin, No. 14CV6009, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (unpublished) ("[A]n ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions."); see also Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p) (providing that, if conflict exists between medical opinion and RFC, "the [ALJ] must

21

explain why the opinion was not adopted"). Given the potentially disabling impact of PA Bowen's attention/concentration and attendance limitations, the ALJ's failure to either reject and explain or accept and adopt those limitations does not amount to harmless error. See Peeler v. Commissioner of Soc. Sec. Admin., No. 9:19CV3199, 2021 WL 9594588, at *9 (D.S.C. Mar. 16, 2021) (unpublished) ("The ALJ's error [in failing to consider frequency of the plaintiff's absenteeism] is underscored particularly by the VE's testimony, which indicated that absences occurring two or more days per month would preclude any work."); Branch v. Berryhill, No. CIV-16-1108, 2018 WL 1521896, at *4 (W.D. Okla. Mar. 28, 2018) (unpublished) ("The [ALJ's] error [in rejecting without explanation psychologist's opinion regarding the plaintiff's ability to carry out simple instructions] cannot be disregarded as harmless, as the inability to perform simple tasks could preclude Plaintiff from carrying out the unskilled[ ] occupations testified to by the VE and relied upon by the ALJ . . . .").

In sum, the ALJ committed prejudicial error and failed to support with substantial evidence her evaluation of PA Bowen's opinions, warranting remand.

### 2. RFC

In Plaintiff's second and final assignment of error, she contends that "[t]he ALJ's RFC determination is the product of legal error where she fails to adequately account for Plaintiff's

22

severe impairments of osteoarthritis of the bilateral knees and tear of the anterior horn of the medial meniscus of the right knee." (Docket Entry 11 at 18 (bold font and single-spacing omitted); see also Docket Entry 14 at 6-8.) In particular, Plaintiff maintains that "it is not apparent from the ALJ's RFC . . . how any of the limitations directly incorporate Plaintiff's severe impairments of the bilateral knees." (Docket Entry 11 at 19.) Plaintiff further disputes that the ALJ's crediting of the state agency medical consultants' opinions that Plaintiff remained able to perform a range of medium work provided substantial evidence to support the RFC, because "the ALJ failed to properly evaluate the [state agency medical consultants'] opinions." (Id. at 21.) More specifically, Plaintiff faults the ALJ for committing similar errors with respect to the consultants' opinions as the ALJ committed regarding PA Bowen's opinions – (1) relying on the absence of conditions like "ecchymosis, foot drop, . . . or vein engorgement" (id. (citing Tr. 31-32)), (2) noting "the lack of crepitus," when Plaintiff's providers documented "crepitus of the right knee" multiple times (id. at 22 (citing Tr. 397, 410, 419, 430, 452, 457, 541, 548, 559, 648)), and (3) citing to "full range of motion of the hips, ankles and toes" while failing to discuss "examination findings that support limitations related to Plaintiff's severe [knee] impairments," including antalgic gait, decreased range of motion, tenderness to

23

palpation, osteoarthritic changes, pain with range of motion, and tibial alignment issues (id. (citing Tr. 397, 410, 419, 430, 452, 457, 541, 548, 559, 648)).

The undersigned's recommendation to remand this matter for the ALJ to re-evaluate PA Bowen's opinions will require the ALJ to also redetermine Plaintiff's RFC in light of that re-evaluation. Accordingly, the Court need not reach Plaintiff's argument that the ALJ "fail[ed] to adequately account for Plaintiff's severe impairments of osteoarthritis of the bilateral knees and tear of the anterior horn of the medial meniscus of the right knee" in the RFC (Docket Entry 11 at 18 (bold font and single-spacing omitted); see also Docket Entry 14 at 6-8). However, as Plaintiff has argued (see Docket Entry 11 at 21-22), in finding the consultants' opinions "persuasive" (Tr. 31), the ALJ (1) again improperly relied on the absence of "ecchymosis, foot drop, . . . or vein engorgement" in the record (Tr. 32), (2) continued to note the lack of crepitus (id.), despite repeated instances of crepitus documented in the record (see Tr. 397, 410, 457, 466, 541, 548, 559, 648)), and (3) cited to full "range of motion of the hips, ankles and toes" (Tr. 31 (emphasis added)), but entirely failed to discuss PA Bowen's findings on examination of Plaintiff's knees of a limp, decreased range of motion, tenderness to palpation, osteoarthritic changes, pain with range of motion, and tibial alignment issues (see Tr. 31-32; see also Tr. 397, 410, 457, 466,

24

541, 548, 559, 648). Accordingly, upon remand, the ALJ should re-evaluate the opinions of the state agency medical consultants and provide an explanation of the supportability and consistency of those opinions that complies with the regulations.

### III. CONCLUSION

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, to include (1) re-evaluation of the opinions of PA Bowen and the state agency medical consultants, and (2) redetermination of Plaintiff's RFC in light of the re-evaluation of the opinion evidence.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 12, 2023